UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI STEVENS, <br><br> Plaintiff, <br><br> v. <br><br> BRIGHAM YOUNG UNIVERSITY-IDAHO d/b/a BYU-Idaho, and SUSAN STOKES, personal representative of the Estate of Stephen Stokes, <br><br> Defendants. | Case No. 4:16-cv-00530-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Lori Stevens' Motion for Leave to Amend Amended Complaint. Dkt. 30. The Motion is fully briefed and ripe for decision. Having reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending Motion on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

Stevens filed this case against Brigham-Young University-Idaho ("BYU-I") and Susan Stokes, as personal representative of the Estate of Stephen Stokes,[1] on December 9, 2016. Dkt. 1. Prior to any answer or appearance by Defendants in this matter, Stevens filed her Amended Complaint on March 3, 2017. Dkt. 4. In her Amended Complaint, Stevens, a former BYU-I student, alleges generally that Stephen Stokes, a former BYU-I professor, initiated an unwanted relationship with her while she was a student and Stokes was a professor at BYU-I. Stevens alleges that this relationship ultimately became sexually and emotionally abusive. Stevens further asserts that she, along with another student, reported Stokes' inappropriate and abusive behavior to several BYU-I professors and officials, who failed to take any action. The relationship ended when Stokes died on July 1, 2016, from complications during heart surgery.

In her Amended Complaint, Stevens asserted four causes of action against both Defendants: (1) teacher-on-student hostile environment/sexual harassment actionable under Title IX of the Education Amendments Act; (2) teacher-on-student quid pro quo sexual harassment; (3) hostile learning environment in violation of the Rehabilitation Act and the Americans with Disabilities Act; and (4) violation of the Idaho Human Rights Act. Stevens asserted three additional causes of action against Susan Stokes alone: (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) assault and battery.

---

[1] The Court will refer to Defendant Susan Stokes as "Susan Stokes" and Stephen Stokes as "Stokes."

After Defendants filed their Answers to the Amended Complaint, the Court entered a case management order requiring the parties to amend the pleadings and join parties by July 28, 2017, complete discovery by April 27, 2018, and file any dispositive motions by May 25, 2018. Dkt. 15. On December 21, 2018, Stevens filed the Pending Motion to Amend her Amended Complaint. Dkt. 30. Stevens seeks to add two additional claims: (8) negligence per se (against BYU-I and Stokes); and (9) negligent supervision (against BYU-I alone). BYU-I filed an opposition to the Motion to Amend. Dkt. 34. Susan Stokes did not file her own opposition, but notified the Court that she joins in BYU-I's opposition. Dkt. 36. This Motion became ripe when Stevens filed her reply brief on January 25, 2018. Dkt. 38. Finally, on February 9, 2018, as the Court was drafting its decision, Susan Stokes notified the Court that she had settled this matter with Stevens. Dkt. 44. This fact did not affect the Court's decision.

### III. LEGAL STANDARD

"Once [a] district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 . . . establish[ing] a timetable for amending pleadings," Rule 16's standards control any motion to amend the pleadings. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). If the party seeking amendment establishes "good cause" under Rule 16, the party then must demonstrate that amendment is proper under Rule 15. *Johnson*, 975 F.2d at 609.

Rule 16's good cause inquiry focuses primarily on "the diligence of the party seeking the amendment." *Id.* "Rule 16 was designed to facilitate more efficient disposition of cases by settlement or by trial. If disregarded it would 'undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Walker v. City of Pocatello*, 2017 WL 1650014 at *1 (D. Idaho May 1, 2017) (quoting *Johnson*, 975 F.2d at 610); *see also Simplot Livestock Co. v. Sutfin Land & Livestock*, No. 116-CV-00139-EJL-REB, 2018 WL 563142, at *1 (D. Idaho Jan. 25, 2018). The Ninth Circuit has instructed that a "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). Put simply, "good cause" means scheduling deadlines cannot be met despite a party's diligence. 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed.1990).

In contrast, under Rule 15, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend lies within the sound discretion of the trial court, which "must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The Rule 15 "policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Nevertheless, the Supreme Court has instructed district courts to consider the following factors when deciding whether to grant leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. ANALYSIS

Stevens asserts that she recently "uncovered additional information that gives rise to additional claims that can be brought against Defendants." Dkt. 31, at 5. Specifically, Stevens asserts that around November of 2017 she discovered "details about Stokes' relationship with [another] female student named Rachel." Dkt. 30-2, at 18. "Stevens learned that Stokes had engaged in similar grooming behaviors to those he had used on Stevens, including acting as a professional counselor, gifting his used personal articles of clothing . . . to be worn by the female student, and showing up without invitation to the student's home." *Id.* Stevens believes that both Rachel and Susan Stokes reported the relationship to BYU-I, and that, after these reports, "Stokes was directed to no longer counsel female students regarding personal matters." *Id.* at 18–19. Finally, Stevens asserts that she recently learned that "Stokes held himself out as [her] counselor and represented to medical personnel that he was [her] case worker in order to gain access to her while she was hospitalized or at doctor's appointments." Dkt. 31, at 6.

Stevens maintains that these revelations give rise to two new causes of action. First, Stevens seeks to assert a claim of negligence per se based on a violation of Idaho Code § 18-919. "[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence per se." *Sanchez v. Galey*, 112 Idaho

609, 733 P.2d 1234, 1242 (1986) (quoted in *Albertson v. Fremont Cty.*, 834 F. Supp. 2d 1117, 1134–35 (D. Idaho 2011)). Section 18-919 of the Idaho Code states that "[a]ny person acting or holding himself out as a . . . psychotherapist . . . who engages in an act of sexual contact with a patient or client, is guilty of sexual exploitation by a medical care provider." Dkt. 30-2, at 28. Stevens asserts that Stokes violated section 18-919 and that "BYU-Idaho is liable for Stokes' actions through the doctrine of respondeat superior because Stokes' actions were committed within the scope of Stokes' employment with BYU-Idaho, some of Stokes' actions were committed on BYU-Idaho's premises, and Stokes was otherwise under the direction or control of BYU-Idaho when Stokes' actions toward Stevens occurred." *Id.*

Second, Stevens seeks to assert a claim of negligent supervision against BYU-I. The Idaho Court of Appeals has described the tort of negligent supervision as follows:

> [A] negligent supervision claim is not based upon imputed or vicarious liability but upon the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious acts of an employee. . . . [N]egligent supervision liability encompasses conduct of the employee that is outside the scope of employment, at least if the employee is on the employer's premises or using an instrument or property of the employer. An employer's duty of care requires that an employer who knows of an employee's dangerous propensities control the employee so he or she will not injure third parties.

*Rausch v. Pocatello Lumber Co.*, 14 P.3d 1074, 1080 (Idaho Ct. App. 2000) (internal citations omitted). Stevens asserts that the reports Rachel and Susan Stokes made to BYU-I about the relationship between Rachel and Stokes put BYU-I on "notice of Stokes' dangerous propensities toward grooming behavior and inappropriate relationships with female students." Dkt. 30-2, at 29. Stevens then alleges, that despite this notice,

BYU-I failed "to control or properly supervise Stokes so that he did not commit tortious acts against Stevens," and in doing so breached the duty of care it owed to Stevens. *Id.*

*A. Rule 16 Good Cause Standard*

The Court first considers whether Stevens has shown good cause under Rule 16 to justify allowing her to add these two new claims. *See Johnson*, 975 F.2d at 609. As explained below, the Court finds Stevens has not established such good cause to add either the negligence per se claim or the negligent supervision claim.

1. Negligence Per Se Claim

The Court agrees with BYU-I that Stevens has known since before this lawsuit was filed of facts that would give rise to the negligence per se claim. Stevens asserted multiple times in her Amended Complaint that Stokes held himself out as her counselor. Dkt. 4, ¶ 23 ("Stokes advocated for Stevens at school and told other [sic] he was her advisor, counselor, and friend."); ¶ 34 ("Stokes spent a great deal of time with Stevens in his office discussing her past of traumatic physical and sexual abuse, and the disabilities that she suffered as a result of her trauma, taking on a role as a counselor."); ¶ 81 ("Stokes had authority and power over Stevens as it related to her grades, disability accommodation in his classes, as a teaching assistant, and in his declared role as her counselor and patriarch."). Stevens also alleged in her original and Amended Complaints that Stokes performed "therapy" sessions with her and continually "insist[ed] on providing 'therapeutic' rubbing and touching to 'assist' Stevens in managing her anxiety." Dkt. 1, ¶¶ 35, 38.

Despite these assertions, Stevens insists that she could not have brought "her negligence *per se* claim against the Estate previously because, [until this point] it was unclear that Stokes actually acted as and held himself out generally as a counselor to multiple people including [Stevens'] medical providers and other female students." *Id.* The Court is not persuaded. Stevens has failed to cite legal authority to support the conclusion that to be found negligent per se based on a violation of Idaho Code section 18-919 a defendant must have held himself out as a counselor to multiple people. If true, the newly discovered facts—that Stokes told medical providers that he was Stevens' counselor and that he held himself out as a counsel to other female students—would have bolstered a negligence per se claim. However, Stevens was not foreclosed from asserting the negligence per se claim by the designated deadline simply because she did not have this new evidence. The record shows Stevens knew Stokes was holding himself out as her counselor in his communications with her when Stevens filed her original and Amended Complaints. This was enough knowledge to assert the negligence per se claim against the Estate and Stevens' failure to assert the claim earlier shows a lack of diligence.

Nevertheless, Stevens opines that she could not have asserted the negligence per se claim against BYU-I earlier either. Stevens asserts that "until [she] had information that BYU-I was aware of and condoned Stokes' counseling sessions with other female students prior to Plaintiff, [she] would have had difficulty tying in the necessary elements for *respondeat superior* liability under her negligence *per se* claim." Dkt. 38, at 4. Stevens explains that, "by being put on notice about Stokes' behavior and then allowing him to continue to counsel female students subsequent to that notice, BYU-I implicitly

adopted those counseling sessions as within the scope of Stokes' employment with BYU-I." *Id.* at 5. The Court again disagrees.

It is true that, "[u]nder the doctrine of respondeat superior, 'an employer is liable in tort for the tortious conduct of an employee committed within the scope of employment.'" *Nava v. Rivas-Del Toro*, 264 P.3d 960, 964 (Idaho 2011) (quoting *Finholt v. Cresto,* 155 P.3d 695, 698 (Idaho 2007)). "Scope of employment 'refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.'" *Id.* (quoting *Richard J. & Esther E. Wooley Trust v. DeBest Plumbing, Inc.,* 983 P.2d 834, 837–38 (Idaho 1999)). An employer need not explicitly condone, implicitly adopt, or even have specific knowledge of an employee's wrongful conduct in order to held liable for that conduct under a respondeat superior theory. Thus, Stevens did not need evidence that BYU-I had adopted or condoned Stokes' counseling of prior female students in order to assert this negligence per se claim against BYU-I. Because Stevens knew Stokes was holding himself out to her as a counselor well before the amendment deadline expired, she had ample opportunity to investigate whether Stokes was acting within the scope of his employment in doing so. Stevens could have discovered earlier whether Stokes' counseling of Stevens was "closely connected with what [he was] employed to do," or at least "so fairly and reasonably incidental to" what he was employed to do that his counseling "may be regarded as methods, even though quite improper ones, of carrying

out the objectives of [his] employment." *Id.* Accordingly, the Court finds Stevens has not shown good cause under Rule 16 to add a negligence per se claim to this suit.

## 2. Negligent Supervision Claim

The Court also finds that Stevens has failed to show good cause to add her negligent supervision claim. BYU-I asserts a few reasons why the Court should decline to find good cause to add this claim. First, BYU-I argues "Stevens and her attorney failed to act diligently in locating Rachel." Dkt. 34, at 10. Second, BYU-I argues "[t]he allegedly 'new' evidence from Rachel is merely corroborative and cumulative." *Id.* The Court finds it unnecessary to parse through the record and make a determination as to whether Stevens acted diligently enough in locating and contacting Rachel.[2] Rather, the Court finds BYU-I's second argument determinative.

BYU-I made two sub-points with regard to this second argument. First, BYU-I points out that Stevens alleges that Stokes told her about his relationships with Rachel and other students. Accordingly, BYU-I argues, because Stevens knew of these

---

[2] Both sides make strong arguments on this point. BYU-I points out that Stevens knew Rachel's name, and the school she attended, long before she even filed this lawsuit, so locating her should have been easy. Stevens explains that she did not know "Rachel's current last name, and was only aware of her prior last name, which was a very common name." Dkt. 38, at 6. Moreover, at some point Rachel moved out of state and Stevens "did not know to which state Rachel had moved, [and] had no contact information for her." *Id.* at 6–7. Eventually, Rachel initiated contact with Stevens' attorneys after they made several attempts to contact Rachel through other people. *Id.* at 7. Finally, Stevens states that BYU-I named Rachel as a witness, but provided only Rachel's old address and phone number, "both of which were no longer good." *Id.* at 6. Stevens also asserts that both Defendants have been in contact with Rachel, so they must both have current contact information for Rachel, which they had a duty to provide to opposing counsel. *Id.* BYU-I, in response, contends that it has provided "full and complete responses to all of Stevens' discovery requests" and that "Stevens has never once indicated . . . that she lacks [Rachel's] contact information because she has not, to date, requested that contact information." Dkt. 34, at 13–14.

relationships, Stevens could have asserted or investigated this negligent supervision claim earlier. The Court agrees with Stevens that her personal knowledge of these prior relationships alone did not allow her to assert this claim earlier. Rather, it was only after Stevens obtained evidence that BYU-I had notice of at least one of these earlier relationships that she had grounds upon which to assert a negligent supervision claim. *See Rausch*, 14 P.3d at 1080 (stating negligent supervision claim cannot succeed unless the employer "knows of an employee's dangerous propensities").

Second, BYU-I contends that "Stevens could have included a Negligent Supervision cause of action in either of her two prior complaints based upon BYU-I's purported failure to properly supervise Stokes after receiving notice of his relationship with Stevens." Dkt. 34, at 12. The Court agrees. Stevens alleges in her Amended Complaint that she, along with Rachel, reported Stokes' behavior to the following BYU-I faculty members on June 8, 2016: Paul Roberts (Head of the Social Work Program); Richard Whiting (faculty for the Social Work Program); and Nathan Meeker, (Chair of the Sociology and Social Work Department). Dkt. 4, ¶¶ 51–56. These faculty members then reported Stokes' behavior to Steven Dennis (Chair of the Sociology and Social Work Department). *Id.* at ¶ 58. Dennis emailed Stokes the next day to inform him that he "had been reported as having an inappropriate relationship with a student and that all contact with her must stop to avoid further action being taken." *Id.* ¶ 60. These faculty members took no other action to protect Stevens. *Id.* They did not report Stokes to the Title IX Office or to the Dean. *Id.* Stevens then alleges that, thereafter, up until his death about one month later, "Stokes continued to regularly sexually assault and batter [her] on

the BYU-I school campus and in her home." Dkt. 4, ¶ 63. Thus, Stevens knew BYU-I was on notice of Stokes "dangerous propensities" as of June 8, 2016, and failed to take steps to supervise Stokes in order to protect Stevens from further harm. This was enough information to permit Stevens to assert a negligent supervision claim in her original or Amended Complaint. The new information Stevens has recently learned about BYU-I's knowledge of Rachel's relationship with Stokes would then have bolstered the negligent supervision claim. Stevens did not respond to this argument in her reply brief. Therefore, the Court finds Stevens was not diligent in asserting her negligent supervision claim and, accordingly, that she has failed to show good cause to add this claim six months after the time for amending pleadings expired.

Because Stevens has not shown good cause under Rule 16, the Court need not address which amendment would be just under Rule 15.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Stevens' Motion for Leave to Amend Amended Complaint (Dkt. 30) is **DENIED**.

DATED: February 23, 2018

David C. Nye
U.S. District Court Judge