IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| LORI STEVENS<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY – IDAHO dba BYU-Idaho, a Utah corporation and SUSAN STOKES, personal representative of the Estate of Stephan Stokes,<br><br>Defendants. | Case No. 4:16-CV-530-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
|---|---|

## INTRODUCTION

The Court has before it a motion for sanctions for the intentional spoliation of text messages filed by defendant. The motion is fully briefed and at issue. For the reasons explained below, the Court will deny the motion without prejudice to defendant BYU-I's right to raise the motion again depending on trial testimony, and the Court will allow a full inquiry by BYU-I at trial into the issues identified in this decision.

## LITIGATION BACKGROUND

Plaintiff Stevens, a former BYU-I student, alleges that Robert Stokes, a former BYU-I professor, initiated an unwanted relationship with her while she was a student and Stokes was a professor at BYU-I. Stevens alleges that this relationship ultimately became sexually and emotionally abusive. She further asserts that she, along with another student, Danielle Spencer, reported Stokes' inappropriate and abusive behavior to

several BYU-I professors and officials, who failed to take any action. The relationship ended when Stokes died on July 1, 2016, from complications during heart surgery. Stevens originally sued BYU-I and the Stokes estate. She later settled her claims against the Stokes estate. The LDS Church intervened for "the limited purpose of protecting its claims of privilege. . . ." *See Order (Dkt. No. 89).*

There are now four claims in this case against BYU-I:

1. Teacher-on-student hostile environment/sexual harassment actionable under Title IX of the Education Amendments Act;
2. Teacher-on-student quid pro quo sexual harassment;
3. Hostile learning environment in violation of the Rehabilitation Act and the Americans with Disabilities Act; and
4. Violation of the Idaho Human Rights Act.

## FACTUAL BACKGROUND

In this lawsuit, Stevens intends to introduce selected text messages between her and Stokes to describe that relationship and support her claim of harassment and abuse. It is undisputed, however, that Stevens selectively and intentionally deleted a large amount of texts between the two. BYU-I argues that Stevens' deletions warrant sanctions such as dismissal of this lawsuit or exclusion of the remaining texts from evidence. To resolve this motion, the Court must review what the record reveals about Stevens' deletions of the texts.

During her relationship with Stokes, and prior to his death, Stevens would selectively delete certain texts between the two, but stopped that practice after he died. *See Stevens Deposition at 126.* So what did Stevens delete? She testified that she generally deleted "chitchat" such as her texts to Stokes that she "woke up at

5:00 this morning and I went and had breakfast." *Id.* at 121. At other times, she randomly deleted texts with Stokes because she "was having a really bad day and my phone was clear full [and] I didn't even want to look at them, and I would just hit delete." *Id.* at 125. But she kept Stokes' texts that reminded her that she was "a good person – because I need those reminders all of the time to function. If I looked at it, and it said, 'you're a good person,' then I saved it." *Id.* at 123. She also saved text messages from Stokes where she questioned "whether he was telling me the truth or not." She kept those texts as a form of protection because "if it turns out he is lying to me, if I ever told anybody that he was having sex with me, nobody would believe me." *Id.* at 123-24.

When asked if the number of texts she deleted prior to Stokes' death was "a huge number of texts," Stevens answered "yeah." *Id.* at 128. At another point, when asked if she deleted texts before Stokes died, Stevens answered "[a]ll the time." *Id.* at 88.

After Stokes died, Stevens testified that she took screen shots of the remaining text messages between her and Stokes and printed them out, resulting in 800 pages of texts. *See Casperson Declaration (Dkt. No. 208-1)* at ¶ 3. She did not at this time delete any of the remaining texts, so she had them both on her phone and in hard copy in six binders.

Stevens filed this lawsuit on December 9, 2016. About two or three months later – in February or March of 2017 – Stevens was using her phone when, she testified, her phone "froze" and quit working. *Id.* at 110; *see also*

**Memorandum Decision & Order – page 3**

*Exhibit T (Dkt. No. 213-2)*. To repair the phone, she took it to the AT&T store where she had purchased it, to have them restore the phones functionality. *Id.* at 110. She told the clerk that "I had important things on there that I didn't want to lose." *Id.* at 114. Nevertheless, the clerk did some type of factory reset that deleted all the text messages. *Id.* When Stevens was asked why she did not take her phone to her attorneys for them to preserve the messages prior to it malfunctioning, Stevens explained that "I had all the text messages on the paper [and] . . . I really didn't even realize how big of an issue it was going to be." *Id.* at 116. Stevens testified that she did not tell her attorneys that she was taking her phone in for repairs and that her attorneys "didn't even know I went [to the AT&T store]." *Id.* at 112, 115.

This incident was described somewhat differently by Stevens' counsel Deann Casperson in her letter to defense counsel explaining the incident. Casperson wrote that,

> [w]e directed her [Stevens] to go to the Verizon store for professional assistance. We specifically instructed Ms. Stevens to inform the person assisting her that she absolutely could not lose the messages stored on her phone. She explained this to the clerk, but the clerk inadvertently reset Ms. Stevens' phone to its factory settings, deleting the text messages on her phone.

*See Casperson Letter (Dkt. 202-19)*. BYU-I argues that Stevens' intentional deletion of text messages is prejudicial to their defense of this case, and they seek sanctions under Rule 37(e), including a dismissal of this action or the exclusion of all remaining text messages from evidence.

# LEGAL STANDARDS

The spoliation of electronic discovery is covered by Rule 37(e), "which essentially functions as a decision tree". *Oracle America, Inc. v. Hewlett Packard Enterprise Company,* 328 F.R.D. 543, 549 (N.D. Cal. 2018). Rule 37(e) states as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is *lost* because a party failed to take *reasonable steps to preserve it*, and it *cannot be restored or replaced* through additional discovery, the court:
> (1) upon finding *prejudice to another party* from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the *intent* to deprive another party of the information's use in the litigation may:
>     (A) presume that the lost information was unfavorable to the party;
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>     (C) dismiss the action or enter a default judgment.

*See Rule 37(e)* (emphasis added). The decision tree starts with an inquiry of whether the data is forever gone: The Court must consider three questions to determine whether ESI has been "lost" – (a) did the discoverable ESI exist at the time a duty to preserve arose, (b) did the party fail to take reasonable steps to preserve the ESI, and (c) is the evidence irreplaceably lost? *Oracle America*, 328 F.R.D. at 549. If the answer to any of these questions is "no", then a motion for spoliation sanctions must be denied. If all the questions are answered "yes", then the Court proceeds to determine whether the moving party has been

prejudiced and whether the party subject to potential sanctions had an intent to deprive.

The drafters of Rule 37(e) intended to preempt use of other sources of sanctions – such as state law or the long-established "inherent power" doctrine – and require findings consistent with Rule 37(e) as the only path to remedying the loss of electronically stored information. *See Rule 37 Advisory Committee Notes to the 2015 Amendment* (stating that Rule 37(e) "therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used").

### ANALYSIS

The Court begins its Rule 37(e) "decision tree" inquiry by determining whether the deleted texts are lost. They are. Stevens' phone cannot be used to recover any of the deleted texts because it was wiped clean by the AT&T clerk, according to Stevens. BYU-I subpoenaed records from AT&T but their records did not contain the contents of any texts. *See Kerby Declaration (Dkt. No. 213-3) at ¶ 8.* While Stokes' phone would have contained those texts, the phone he used was his personal phone and when counsel for BYU-I asked the Stokes Estate for the texts, they received only "a partial universe and did not include any of the missing texts or many of the texts that plaintiff did not produce." *See Kerby Declaration (Dkt. No. 213-3) at ¶ 15.* The requirement under Rule 37(e) that the texts be "lost" is therefore satisfied.

The next issues are whether the deletions were intentional and prejudicial. Stevens testified that her deletions during her relationship with Stokes were intentional – she meant to delete texts, as can be seen in the discussion above. Moreover, those deletions are prejudicial to BYU-I. Stevens intends to introduce the remaining texts to describe her relationship with Stokes. Stevens' expert, Anne Munch, will also use the texts to analyze the relationship. Stevens' selected texts may create a misleading description of their relationship but BYU-I is barred by her actions from challenging that narrative.

The next question is whether the texts were deleted at a time when the duty to preserve had arisen. That duty arises when "litigation is reasonably foreseeable." *See Rule 37 Advisory Committee Notes to the 2015 Amendment.* Both parties agree that this is an objective standard.

As discussed above, Stevens, during her relationship with Stokes and before his death, deleted texts at various times for various reasons as the relationship gradually progressed from platonic to sexual. With regard to deletions Stevens made early in the relationship, there is no indication that litigation was reasonably foreseeable at that time. But later in the relationship – when it turned sexual – Stevens testified that she felt manipulated and was sickened by the sex with Stokes. *See Stevens Deposition, supra* at 140 ("I did not want to have sex with him. It made me sick to my stomach"); 123-24 ("[I saved texts from Stokes because] if it turns out he is lying to me, if I ever told anybody that he was having sex with me, nobody would believe me").

**Memorandum Decision & Order – page 7**

At this point – when the relationship turned to manipulative sex – a reasonable person may have foreseen litigation. However, at the same time, there can be an immense difference between recognizing you are being manipulated by a sexual predator – a realization that may be slow to form, given the skill of the predator – and foreseeing that you could sue him. So even then, it is difficult to pin down the time when litigation became reasonably foreseeable.

But the real problem here is that the record does not reveal when the deletions occurred. That makes it impossible to rule as a matter of law that the deletions occurred at a time that the duty to preserve was in existence.

In contrast, the duty to preserve was clearly in place when Stevens took her phone to the AT&T store and the clerk deleted the texts, because this took place after Stevens filed this lawsuit. Rule 37(e) asks: Was that deletion intentional? According to Stevens, it was entirely unintentional. But there are substantial questions with her claim. Her account of the AT&T incident is inconsistent with that of her attorney's, as discussed above. Moreover, the AT&T deletion did not occur in a vacuum; it was preceded by Stevens' selective and substantial intentional deletions over a long period of time during the relationship – recall that she described the number of those deletions as "huge" because she was deleting texts "all the time" – raising a serious question whether she was deleting texts to create a fictional narrative of her relationship with Stokes. If there was any chance of challenging that narrative by recovering the deleted texts, that came to an end with the AT&T deletion. It threw such a

**Memorandum Decision & Order – page 8**

protective shield over Stevens' narrative that it calls into question whether it was due merely to an errant AT&T clerk.

Further questions are raised by counsel's failure to preserve the phone texts, no matter which version of the AT&T incident is true. If counsel's version is correct, counsel allowed Stevens to retain possession of the phone without preserving the texts even after the lawsuit was filed, and then allowed Stevens to pursue repairs by an AT&T clerk without even attempting to take control of the phone and its repairs. Stevens' contrary version of the incident does nothing to exculpate counsel – even under this scenario, counsel failed to immediately preserve obviously crucial evidence at a time when the duty to preserve existed and instead allowed the phone to remain in Stevens' possession.

This cavalier attitude toward the preservation requirement adds another layer of doubt to the "errant clerk" story. These substantial issues regarding intent cannot be answered on this record. They must await trial. If intent is established at trial, the remedies listed in Rule 37(e)(2) come into play: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Even if intent is not established, the Court is authorized, upon a finding of prejudice to

> allow the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all other evidence in the case, in making a decision. . . . In addition, [the Court may] give

traditional missing evidence instructions based on a party's failure
to present evidence it has in its possession at the time of trial.

*See Rule 37 Advisory Committee Notes to the 2015 Amendment.* BYU-I was prejudiced by the AT&T deletion because they cannot independently verify that Stevens' print-out captured all the remaining texts on her phone – they are forced to take her word for it. Stevens' other deletions – done during the relationship – are obviously prejudicial as discussed above.

Even if Rule 37(e) is inapplicable, Stevens' deletions of texts, including the AT&T incident, are relevant to her credibility. Thus, the Court will allow a full inquiry at trial into these matters. The Court is aware that this will increase the length of trial and create a "trial-within-a-trial" but it is the minimum necessary to ensure a fair opportunity for BYU-I to challenge the narrative created by Stevens' selective, intentional, and substantial deletions of text messages. More may be needed depending on the testimony at trial.

For these reasons, the Court will deny the motion for sanctions without prejudice to the right of BYU-I to raise the motion again at trial after admitting evidence and testimony concerning the issues raised in this decision.[1]

## ORDER

In accordance with the Memorandum Decision set forth above,

---

[1] BYU-I raised various evidentiary objections but the Court finds those to be premature and will take them up at trial.

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for sanctions (docket no. 202) is DENIED without prejudice to the right of BYU-I to raise the motion during trial, as discussed more fully in the Memorandum Decision.

DATED: December 3, 2019

_____
B. Lynn Winmill
U.S. District Court Judge