UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY – IDAHO dba BYU-Idaho, a Utah corporation and SUSAN STOKES, personal representative of the Estate of Stephan Stokes,<br><br>Defendants. | Case No. 4:16-cv-00530-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to exclude the expert testimony of Anne Munch. The motion is fully briefed and at issue. For the reasons expressed below, the Court will grant in part and deny in part the motion.

## LITIGATION BACKGROUND

Plaintiff Stevens, a former BYU-I student, alleges that Robert Stokes, a former BYU-I professor, initiated an unwanted relationship with her while she was a student and Stokes was a professor at BYU-I. Stevens alleges that this relationship became sexually and emotionally abusive. She further asserts that she, along with another student, Danielle Spencer, reported Stokes' inappropriate and abusive behavior to several BYU-I professors and officials, who failed to take any

action. The relationship ended when Stokes died on July 1, 2016, from complications during heart surgery.

Stevens originally sued BYU-I and the Stokes estate. She later settled her claims against the Stokes estate. The LDS Church intervened for "the limited purpose of protecting its claims of privilege. . . ." *See Order (Dkt. No. 89).*

There are now four claims in this case against BYU-I:

1. Teacher-on-student hostile environment/sexual harassment actionable under Title IX of the Education Amendments Act;
2. Teacher-on-student quid pro quo sexual harassment;
3. Hostile learning environment in violation of the Rehabilitation Act and the Americans with Disabilities Act; and
4. Violation of the Idaho Human Rights Act.

In support of its claims, Stevens filed the expert report of Ann Munch. BYU-I countered with a report from its expert, and Stevens responded by filing a combined rebuttal and supplement expert report from Munch. That report in part rebutted the opinions contained in the Schuster report and in part supplemented Munch's original report.

BYU-I has filed a motion to exclude the testimony of Munch in its entirety, arguing that Munch's claims lack relevance and make impermissible legal conclusions. BYU-I further contends that Munch's supplemental report contains an impermissible new claim. The Court will examine each of these arguments in

turn.

## ANALYSIS

### Relevance and Permissibility of Munch's Expert Testimony

BYU-I argues that many of the opinions submitted by Munch are irrelevant or violate Rule 403 and should be stricken. Munch is a former prosecuting attorney with extensive experience in cases involving sexual assault and domestic violence. She now works as a consultant to organizations, including colleges, to improve responses to allegations of sexual assault and harassment. Munch offers her testimony in order to highlight "important dynamics often overlooked by institutions who are responsible for recognizing, understanding and responding to sex discrimination." *Munch Rebuttal Report* (Dkt. 217-6) at 1. Stevens will be using Munch's testimony along with her own to show that she was manipulated by Stokes, their relationship was not consensual, and that the information provided to BYU-I about the relationship should have been enough to trigger a report about Stokes to BYU-I's Title IX office.

Munch begins by describing the cultural influences that surround reporting sexual misconduct, including blame shifting from the perpetrator to the victim, and a victim's fears of not being believed or retaliated against. *See Munch Report* (Dkt. 217-4) at 1-2. Munch then explains how Title IX is intended to function within universities, to improve reporting from victims of sexual misconduct and to yield

appropriate investigations of those claims. *See Munch Report* (Dkt. 217-4) at 3. She goes on to discuss how a person in a position of power could groom someone over a period of time, first creating a special relationship and then pushing sexual boundaries. *See Munch Report* (Dkt. 217-4) at 4.

The Court finds that the testimony to this point has been within Munch's area of expertise. Moreover, it is relevant to understanding how Stevens could have participated actively in a relationship that was not consensual. The testimony further helps to explain how a university might be on notice about the dangerous power differential between a professor and a student. The probative value of Munch's testimony to this point is not substantially outweighed by any prejudicial effect under Rule 403.

Munch's testimony then expands beyond generalities to applying these concepts to the facts of the case. Munch recounts the evolution of Stokes and Stevens' relationship and pronounces the sexual escalation to be the product of Stokes grooming Stevens. *See Munch Report* (Dkt. 217-4) at 4-6. Munch's qualifications give her the expertise to explain general power dynamics and common grooming techniques. In addition, her long experience as an attorney prosecuting sexual assault cases gives her the qualifications to render an expert opinion on grooming. The Court therefore finds that this testimony is not subject to exclusion

Similarly, Munch's testimony about general Title IX policies and procedures does not violate Rule 403 where it is confined to discussions of Title IX's history and purpose, as well as general industry practices and standards. *See Portz v. St. Cloud State University*, 297 F.Supp.3d 929, 953 (D. Minn. 2018). However, Munch may not testify as to the legal requirements under Title IX. *See id.* Nor may she "give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)). "In addition to prohibiting legal expert testimony which defines the governing law, courts have also prohibited legal expert opinion which applies the law to the facts." *L.E. v. Lakeland Joint Sch. Dist. #272*, 403 F. Supp. 3d 888, 896 (D. Idaho 2019) (quoting *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005)). Munch's testimony regarding legal standards and their applicability to this case must be excluded.

**New Argument in the Expert Witness Rebuttal Report**

The Court turns next to that portion of Munch's later-filed expert report that she describes as supplemental. *See Stevens' Brief (Dkt. No. 231) at p. 8.* BYU-I responds that this portion of her report asserts an entirely new theory of recovery and is not a legitimate supplementation.

In this supplemental portion of her report, Munch describes how BYU-I's official practices effectively created an institutional policy of not reporting sexual harassment claims to the campus Title IX office. Munch writes that this supplemental theory of liability is based "on a large volume of new discovery" provided by BYU-I after the filing of her first report. The supplemental report was required, Stevens argues, because although the Court order requiring BYU-I to produce certain records – including records of prior Title IX investigations at BYU-I – was filed about a month prior to Munch's initial report, BYU-I did not produce those records until months after Munch's initial report, requiring her to file this supplemental report to analyze the new discovery.

BYU-I points out that while Munch's supplemental opinion is based on this newly produced discovery, she also cites other evidence that was available long before her original report, such as Title IX regulations, OCR publications, BYU-I's Sexual Misconduct policy, and the depositions of Roberts, Meeker, Dennis, Barnes, Price, Smith, Whiting and Fox. She cites all of these – along with the newly discovered evidence – in her supplemental opinion.

This new theory makes a big difference in the case. Under the institutional policy theory, Stevens need not prove actual notice. The element of actual notice has been one of the main contested issues throughout the four years this case has been pending, and the new theory changes the course of the debate.

BYU-I argues that Munch could have raised this new theory in her original report by citing then-existing evidence. But that is not so clear. The new evidence is not tangential or marginal to the new theory that BYU-I had an institutional policy – indeed it may be indispensable. The details of this new discovery include, according to Munch, evidence that in past Title IX investigations, BYU-I was blaming victims, ignoring red flags, chilling student reporting, and not properly documenting the incidents, all of which led her to the opinion that BYU-I had an existing institutional policy of deliberate indifference at the time of Stevens' allegations.[1]

This is crucial evidence. The main method of proving that an institution had an existing policy of deliberate indifference at the time of the incident in question would be to show how the institution handled similar incidents in the past. To put it another way, the absence of such evidence could well lead to dismissal of a claim based on an institutional policy.

Thus, the new theory could not be fully formed until the new evidence appeared. Indeed, if Munch had placed the new theory in her original report based

---

[1] The Court assumes, as it must at this stage of the proceedings, that Steven's description of the new evidence (summarized above) is accurate. This decision makes no findings on the accuracy of that description or on the ultimate admissibility of the new evidence.

entirely on the then-existing evidence, it may have been subject to exclusion. This new theory could not have been entirely a surprise to BYU-I because Stevens had made timely discovery requests for material – like past Title IX investigations – that clearly signaled her intent to pursue a theory of institutional policy.

For all these reasons, the Court will not exclude Munch's opinions in her supplemental report regarding an institutional policy of deliberate indifference. In fairness, BYU-I must be allowed to submit an expert rebuttal report to this supplemental report. The Court will direct counsel to submit an agreed-upon schedule for that rebuttal report.

**Quid Pro Quo & Hostile Environment**

BYU-I seeks to exclude Munch's opinions in her rebuttal report on quid pro quo and hostile environment. However, Munch was rebutting statements by BYU-I's expert who opined about these issues. *See Schuster Report (Dkt. No. 217-7)* at pp. 17-18. Therefore, that portion of the rebuttal report was appropriate and the opinions disclosed therein may be used at trial.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to exclude (docket no. 217) is GRANTED IN PART AND DENIED IN PART consistent with the rulings in the decision above.

IT IS FURTHER ORDERED, that counsel shall submit an agreed-upon schedule for BYU-I to file a rebuttal expert report to Munch's supplemental report.

DATED: February 3, 2020

B. Lynn Winmill
U.S. District Court Judge