IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI STEVENS<br><br>    Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY –<br>IDAHO dba BYU-Idaho, a Utah corporation<br>and SUSAN STOKES, personal<br>representative of the Estate of Stephan<br>Stokes,<br><br>    Defendants. | Case No.  4:16-CV-530-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

The Court has before it a motion by BYU-I to take the deposition of opposing counsel Deann Casperson.  The motion is fully briefed and at issue.  For the reasons expressed below, the Court will grant the motion.

## LITIGATION BACKGROUND

Plaintiff Stevens, a former BYU-I student, alleges that Robert Stokes, a former BYU-I professor, initiated an unwanted relationship with her while she was a student and Stokes was a professor at BYU-I. Stevens alleges that this relationship ultimately became sexually and emotionally abusive. She further asserts that she, along with another student, Danielle Spencer, reported Stokes' inappropriate and abusive behavior to several BYU-I professors and officials, who failed to take any action. The relationship ended when Stokes died on July 1, 2016, from complications during heart surgery.

**Memorandum Decision & Order – page 1**

Stevens originally sued BYU-I and the Stokes estate. She later settled her claims against the Stokes estate. The LDS Church intervened for "the limited purpose of protecting its claims of privilege. . . ." See Order (Dkt. No. 89).  There are now four claims in this case against BYU-I:

1. Teacher-on-student hostile environment/sexual harassment actionable under Title IX of the Education Amendments Act;
2. Teacher-on-student quid pro quo sexual harassment;
3. Hostile learning environment in violation of the Rehabilitation Act and the Americans with Disabilities Act; and
4. Violation of the Idaho Human Rights Act.

To support her claim of harassment and describe her relationship with Stokes, Stevens intends to introduce selected text messages between her and Stokes.  She had about 800 of those texts printed out and stored in binders.  It is undisputed, however, that Stevens selectively and intentionally deleted a large amount of texts between the two. After filing this lawsuit, Stevens claims that her phone (containing the remaining texts) stopped working.  She took the phone to the AT&T store where a clerk erased all data on the phone.

BYU-I complained that the text deletions and phone erasure made it impossible to verify or rebut Stevens' claim that the texts she saved accurately represented her relationship with Stokes.  To address this problem, BYU-I filed a motion for sanctions, asking the Court to find that Stevens' conduct was intentional and to impose sanctions including a dismissal of the case.

In an analysis of that motion, the Court found substantial questions of fact that could not be resolved as a matter of law.  *See Memorandum Decision (Dkt. No. 233).*  It

was unclear whether Stevens was deleting texts at a time when her duty to preserve evidence was in place.  While that duty was clearly in place when the phone was erased (because she had filed suit by that time), there were discrepancies between Stevens' account of the erasure and her counsel's account.  While these issues precluded a final ruling on the motion for sanctions, the Court held that (1) it would allow a "full inquiry" into these issues; (2) depending on the outcome of that inquiry, BYU-I could raise the sanctions motion again; and (3) regardless of whether sanctions would be imposed, the text deletions, phone erasure, and discrepancies between accounts of the erasure, were all relevant to Stevens' credibility.

To prepare for that trial, BYU-I now seeks to take the deposition of Stevens' counsel DeAnn Casperson.  Stevens objects, claiming the motion is just a ruse to disqualify her counsel.

## LEGAL STANDARDS

Both sides agree that to take the deposition of opposing counsel, BYU-I "must show that the information sought (1) cannot be obtained through other means; (2) is relevant and not covered by privilege or the work-product doctrine; and (3) is necessary in preparing their case." *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327-28 (8th Cir. 1986).  In addressing this burden of proof, the Court has held that "[i]t is rare for this standard to be satisfied." *Stewart Title Guar. Co. v. Credit Suisse*, 2013 WL 4763949, at *1 (D. Id. Sept. 4, 2013).

## ANALYSIS

As the Court pointed out in its earlier decision, there are discrepancies between Stevens' account of the phone erasure and her counsel's account. Stevens' states that he went to the AT&T store without ever telling her counsel what she was doing. *Id.* at p. 4. Ms. Casperson states that she "directed" Stevens to go to a "Verizon" store. *Id.*

Stevens has now made new allegations in her response to the motion for sanctions. She alleges, for the first time, that she used three different phones (one after another) during her relationship with Stokes. *See Declaration of Stevens (Dkt. No. 242-1)* at ¶ 22. She alleges she printed out all the texts from the first phone, but notes that it was "reset and given to my son" in 2015. *Id.* That would be about a year before she filed this lawsuit.

With regard to the second phone, she gave that phone to her current counsel who downloaded any texts remaining after Stevens' deletions. *Id.* at ¶ 25. Stevens got her third phone about a month before Stokes passed away and she continued her process of deleting texts and "taking screen shots of what I wanted to save." *Id.* at ¶¶ 27, 33, 34. She alleges that because of the short time she had the phone and her deletions, there were "not a lot of text messages still on the phone" when it was reset and erased by the errant clerk at the AT&T store. *Id* at ¶ 27.

Stevens also includes new allegations about her trip to get her phone (now identified as her third phone) repaired after it stopped working. She made her first trip to the AT&T store without contacting counsel, and the clerk's reset made the phone functional but left it "unclear at that time whether the contents of my phone were completely gone and irretrievable." *Id.* at ¶ 40. Returning from this first visit, she then

contacted her counsel and told her about the possible loss of data and was advised to "go to the AT&T store or another computer store to see if there was any possible way to restore the materials on my phone . . . ." *Id.* at ¶ 41.  She returned to that store but was advised they could do nothing for her and recommended she go to another store – PC Metro – for help.  *Id.* at ¶ 42.  She visited that store but they could not restore her data. *Id.* at ¶ 43.

Ms. Casperson argues that nothing relevant can be gained from taking her deposition.  The Court disagrees.  As the Court discussed in its prior decision, intent is an important element in determining whether sanctions for spoliation are warranted.  BYU-I is entitled to discovery on the question of intent, and Ms. Casperson's compliance with the duty to preserve evidence will be directly relevant to whether there was an intent to erase the phone.  Moreover, as the Court discussed in its earlier decision, it appears there is some discrepancy between Stevens' account of the phone erasure and that of her counsel.  While Stevens attempts to explain that discrepancy by including additional details about the three phones, her initial account remains and is contrary to her counsel's account.  BYU-I is entitled to explore those accounts because they are relevant to Stevens' credibility.

BYU-I has established each of the *Shelton* factors.  Ms. Casperson's deposition will inquire into relevant evidence that is necessary to resolve (1) the motion for sanctions and (2) Stevens' credibility.  Moreover, the evidence is not available by other means and is not privileged (as both Ms. Casperson and Stevens have revealed their discussions about the phone erasure without claiming any privilege).

**Memorandum Decision & Order – page 5**

For these reasons, the Court will grant the motion to take Ms. Casperson's deposition.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to compel deposition (docket no. 241) is GRANTED.

DATED: June 1, 2020

B. Lynn Winmill
U.S. District Court Judge