UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI STEVENS, | Case No. 4:16-cv-00530-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| BRIGHAM YOUNG UNIVERSITY - IDAHO, dba BYU-Idaho, et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it a motion to compel filed by defendant BYU-Idaho ("BYU-I"). (Dkt. 249.) For the reasons set forth below, the Court will grant in part and deny in part the motion.

## LITIGATION BACKGROUND

Plaintiff Stevens, a former BYU-I student, alleges that Robert Stokes, a former BYU-I professor, initiated an unwanted relationship with her while she was a student and Stokes was a professor at BYU-I. Stevens alleges that this relationship ultimately became sexually and emotionally abusive. She further asserts that she, along with another student, Danielle Spencer, reported Stokes' inappropriate and abusive behavior to several BYU-I professors and officials, who

failed to take any action. The relationship ended when Stokes died on July 1, 2016, from complications during heart surgery.

Stevens originally sued BYU-I and the Stokes estate. She later settled her claims against the Stokes estate. The LDS Church intervened for "the limited purpose of protecting its claims of privilege. . . ." (*See* Dkt. 89).  There are now four claims in this case against BYU-I:

1. Teacher-on-student hostile environment/sexual harassment actionable under Title IX of the Education Amendments Act;

2. Teacher-on-student quid pro quo sexual harassment;

3. Hostile learning environment in violation of the Rehabilitation Act and the Americans with Disabilities Act; and

4. Violation of the Idaho Human Rights Act.

To support her claim of harassment and describe her relationship with Stokes, Stevens intends to introduce selected text messages between her and Stokes.  She had about 800 of those texts printed out and stored in binders.  It is undisputed, however, that Stevens selectively and intentionally deleted a large amount of texts between the two.

After filing this lawsuit, Stevens claims that her mobile phone (containing the remaining texts) stopped working.  She took the phone to the AT&T store

where a clerk erased all data on the phone.

BYU-I complained that the text deletions and phone erasure made it impossible to verify or rebut Stevens' claim that the texts she saved accurately represented her relationship with Stokes.  To address this problem, BYU-I filed a motion for sanctions, asking the Court to find that Stevens' conduct was intentional and to impose sanctions including a dismissal of the case.

In an analysis of that motion, the Court found substantial questions of fact that could not be resolved as a matter of law. (*See* Dkt. 233.) It was unclear whether Stevens was deleting texts at a time when her duty to preserve evidence was in place. While that duty was clearly in place when the phone was erased (because she had filed suit by that time), there were discrepancies between Stevens' account of the erasure and her counsel's account. While these issues precluded a final ruling on the motion for sanctions, the Court held that (1) it would allow a "full inquiry" into these issues; (2) depending on the outcome of that inquiry, BYU-I could raise the sanctions motion again; and (3) regardless of whether sanctions would be imposed, the text deletions, phone erasure, and discrepancies between accounts of the erasure, were all relevant to Stevens' credibility. The Court found that the "trial-within-a trial" is "the minimum necessary to ensure a fair opportunity for BYU-I to challenge the narrative created

by Stevens' selective, intentional, and substantial deletions of text messages." (*Id.*

at 10.)

To prepare for that "trial-within-a-trial," BYU-I moved to compel the

deposition of DeAnne Casperson, Stevens' counsel. (Dkt. 241.) The Court granted

the motion, explaining:

> As the Court discussed in its prior decision, intent is an important
> element in determining whether sanctions for spoliation are
> warranted. BYU-I is entitled to discovery on the question of intent,
> and Ms. Casperson's compliance with the duty to preserve evidence
> will be directly relevant to whether there was an intent to erase the
> phone. Moreover, as the Court discussed in its earlier decision, it
> appears there is some discrepancy between Stevens' account of the
> phone erasure and that of her counsel. While Stevens attempts to
> explain that discrepancy by including additional details about the
> three phones, her initial account remains and is contrary to her
> counsel's account. BYU-I is entitled to explore those accounts
> because they are relevant to Stevens' credibility.
>
> BYU-I has established each of the *Shelton* factors. Ms.
> Casperson's deposition will inquire into relevant evidence that is
> necessary to resolve (1) the motion for sanctions and (2) Stevens'
> credibility. Moreover, the evidence is not available by other means
> and is not privileged (as both Ms. Casperson and Stevens have
> revealed their discussions about the phone erasure without claiming
> any privilege).

(*Memorandum Decision*, Dkt. 246 at 5-6.)

To prepare for the deposition of Ms. Casperson, BYU-I requested that

Ms. Casperson produce "the content of your legal/client file" and

specifically "evidence relevant to the deletion of text messages," including

"any documentation concerning this evidence and its handling by client or counsel." (*Email from Steven Anderson to DeAnne Casperson dated 8/12/2020*, Dkt. 205-2 at 6-7.) BYU-I's counsel went on to list the following examples of the types of documents sought:

1. Documentary evidence of instructions from counsel to Ms. Stevens (or others) to maintain and preserve evidence such as texts, emails, correspondence, etc. In particular this includes litigation hold instructions, correspondence relating to any violations of the hold instructions, and documents relating to any attempt to remedy the violations.

2. Notes of client or interoffice communications relating to maintaining and/or destroying, tampering or altering evidence.

3. Notes of client or interoffice communications relating to the fact of destruction or alteration- that is, when and how counsel became aware that deletions had occurred and, specifically, that alterations had occurred within given text strings.

4. Notes of conversations concerning counsel's obligation to notify the Court and opposing counsel of text alterations, evidence destruction or electronic information deletions.

5. Notes relating to the investigation of facts referenced in any of Ms. Stevens' declarations, or counsel correspondence concerning lost, altered or deleted texts.

6. Any documents relating to communications with AT&T or any other retail establishment allegedly involved in resolving the "frozen" cell phone(s) or deleting any texts. This would obviously include any attempts to retrieve the deletions or any documentation concerning the investigation of same.

7. Any documents relating to counsel's allowance of Ms. Stevens to retain the cell phone or phones after commencement of this action as described in the Court's Memorandum Decision, pg. 9

(Dkt. #233).

8.    Any documentation which may demonstrate "intent" to destroy, alter or failure to maintain evidence.

9.    Any documentation relating to the contradictory or inconsistent versions of the text deletions as referenced in the Court's Memorandum Decisions (Dkts. # 233, 246) pgs. 9 and 13 respectively.

10.    Any other documents, notes, emails concerning these subjects especially any communications with Ms. Stevens.

(*Id.*)

The parties were unable to reach an agreement regarding BYU-I's request for production of documents and, accordingly, reached out to the Court for an informal discovery dispute conference. Following the conference, Stevens' counsel informed the Court and BYU-I's counsel that, "due to the expansive nature of BYU-I's request, the fact that it sought information in ten separate areas, and the numerous motions and disputes in the case, Plaintiff determined that all parties would be served by a written order to help eliminate future disputes." (Dkt. 251 at 6; Dkt. 251-1 at 3.)

On October 30, 2020, BYU-I filed a motion to compel, requesting that Plaintiff's counsel of record, Casperson Ulrich Dustin,  be ordered "to produce all documents that are relevant to the spoliation of evidence topics that the Court already ruled are not privileged and that may be fully explored

at trial and at Plaintiff's counsel's court-ordered deposition." (Dkt. 249.)

## DISCUSSION

### A.    The request for documents was not untimely.

Stevens argues that BYU-I's request for documents is untimely. She points out that BYU-I has known of the phone erasure incident since November 10, 2017; BYU-I was provided with additional information regarding the erasure on December 19, 2017; and Stevens testified at length about the erasure at her deposition in August 2018. Thus, she argues, that BYU-I was aware of the phone erasure prior to the March 29, 2019, close of discovery, yet failed to file a motion to compel Ms. Casperson's deposition until February 4, 2020.

Stevens previously raised this argument in opposition to the motion to compel Ms. Casperson's deposition (*see* Dkt. 242 at 9-10). The argument was as unpersuasive then as it is now.  There is clearly good cause for allowing the additional discovery on spoliation at this time.

Although BYU-I has known about the phone erasure since November 2017, and had the opportunity to and did inquire into the phone erasure during Stevens' deposition, BYU-I did not have reason to know it would be allowed to inquire into the spoliation issue at trial until the Court's December 2019 order regarding spoliation. BYU-I moved to compel Ms. Casperson's deposition shortly thereafter and requested that Stevens disclose the subject documents shortly after the Court

issued its order compelling Ms. Casperson's deposition. Thus, BYU-I has been

diligent in seeking the discovery it needs to prepare for the trial-within-a-trial on

spoliation, and good cause exists for reopening discovery for that limited purpose.

*See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608-09 (9th Cir. 1992)

(good cause standard focuses primarily on the diligence of the requesting party);

*Sheridan v. Reinke*, 611 Fed. App'x 381, 384 (9th Cir. 2015) (applying *Johnson*

"good cause" requirement to motions to reopen discovery).

> **B.  Whether rights under the attorney work-product doctrine have been waived.**

The Court has previously determined that evidence regarding the phone

erasure is not privileged "as both Ms. Casperson and Stevens have revealed their

discussions about the phone erasure without claiming any privilege." (Dkt. 246 at

5.) However, Stevens now argues that the requested documents include attorney

work product and opinion work product and that her rights under the work product

doctrine have not been waived.

As the party seeking to protect documents under the work product doctrine,

Stevens bears the burden of showing that the documents are, in fact, work product.

*See In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007). The work product

doctrine, codified in Rule 26(b)(3), protects "from discovery documents and

tangible things prepared by a party or his representative in anticipation of

litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004).

If a document falls within the work product doctrine, the adverse party must then show a "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." *See* Rule 26(b)(3). The standard is higher when opinion work product is sought. There, the adverse party must make "a showing beyond the substantial need/undue hardship test." *See Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573, 577 (9th Cir. 1992). That higher test requires that the attorney's mental impressions be at issue in the case, and further that the need for the material is compelling. *Id*. at 577. Notes taken by an attorney from a witness interview are generally opinion work product because, in choosing what to write down and what to omit, the attorney necessarily reveals his or her mental processes. *See In re Grand Jury Proceedings*, 492 F.3d 976, 981-82 (8th Cir. 2007).

Stevens asserts that the information requested by BYU-I is attorney work product; that counsel notes requested by BYU-I are opinion work product; and that BYU-I has not met its burden for disclosure of the information. Stevens further argues that "it would be error to find waiver of the attorney work product privilege and require Plaintiff to disclose her client file or any of the client file documentation or communications that BYU-I seeks." (Dkt. 251 at 10.) However,

as discussed below in more detail, Stevens' counsel is not being required to turn over the entire client file. The Court is, instead, limiting the required disclosure to information regarding any litigation hold, general instructions to Stevens about spoliation, information regarding the phone erasure incident, and attempts to remedy the erasure of information from that phone.

Stevens' arguments are insufficient to demonstrate that the documents to be disclosed are, in fact, work product, and she has not submitted any documents to the Court for *in camera* review. Even assuming that Stevens can meet her burden of demonstrating that the documents include attorney work product and/or opinion work product, the Court finds disclosure of the documents, as detailed and limited below, to be appropriate even if they contain some work product.

First, although a litigation hold, and general instructions to a client regarding spoliation, would generally be privileged and not subject to disclosure, where, as here, there is evidence of spoliation, such information is discoverable. *See, e.g., Agne v. Papa John's Int'l, Inc*., No. C10-1139-JCC, 2012 WL 12882903, at *3 (W.D. Wash. Feb. 6, 2012) (requiring disclosure of litigation hold notices where there was evidence of spoliation ); *City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2011 WL 13223880, at *2 (C.D. Cal. Nov. 22, 2011) ("Even if particular litigation hold communications are privileged, the court has an

inherent power to order their production in connection with a spoliation claim."); *Major Tours, Inc. v. Colorel*, No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) ("Although in general hold letters are privileged, the prevailing view, which the Court adopts, is that when spoliation occurs the letters are discoverable.").

Second, as the Court has already ruled, BYU-I will be allowed a full inquiry at trial into Stevens' credibility regarding the deletions of text messages and other metadata, and the other the issues raised by BYU-I's motion for sanctions, including counsel's "cavalier attitude toward the preservation requirement," counsel's failure to preserve the phone texts, and Stevens' and/or counsel's intent as to the spoliation. (Dkt. 233 at 8-10; *see* Dkt. 246 at 5.) Counsel's mental impressions, conclusions, opinions, and legal theories related to a litigation hold, general instructions regarding spoliation, and the phone erasure incident are directly at issue in determining the intentionality of the spoliation. The information the Court is requiring Stevens to disclose is thus both relevant and necessary to the intentionality inquiry, and the Court finds that there is a substantial and compelling need for the requested documents. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (for disclosure of opinion work product, the attorney's mental impressions must be at issue in the case, and the need for the

material must be compelling); *see also Bittaker v. Woodford*, 331 F.3d 715, 718-20, 722 n.6 (9th Cir. 2003) (where attorney performance is directly at issue, attorney client and work product privileges are waived).[1]

     The Court also finds that BYU-I cannot obtain the substantial equivalent of the documents through any other means. BYU-I explains that it has already sought discovery from and deposed Stevens on the spoliation issue but is still left with significant questions regarding Steven's credibility and the intentionality of the deletion of text messages and metadata on the phone(s), including the role and involvement of counsel in the failure to preserve. The deposition of Ms. Casperson will allow BYU-I to inquire further into the spoliation issues, including issues of credibility and intentionality. The documents are necessary to test the veracity of that testimony and there is no substantial equivalent to these documents.

     Stevens argues that finding a waiver of her rights under the attorney work product doctrine with regard to the requested documents would be inconsistent with an earlier ruling by the Court in relation to the discoverability of notes taken

---

[1] It is also worth noting, as BYU-I points out, that the information the Court is requiring Stevens to disclose does not implicate the purpose behind the work product doctrine – to prevent a party from exploiting the efforts of its adversaries in preparing for litigation. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (noting the need of counsel to be able to prepare to meet merits of claims and defenses without "undue and needless interference" from adversaries).

by attorney Mckinzie Cole during an interview of Stevens' friend, Danielle

Spencer. The Court disagrees.

In relation to the Cole notes, Stevens contended that Spencer had changed

her story after spending extensive time with BYU-I's counsel and that the Cole

notes were needed to compare Spencer's current story to her prior story. The Court

found that this explanation did "not come close to making the required showing"

for disclosure of opinion work product represented by the Cole notes. (Dkt. 154 at

5.) "To the extent it is true that Ms. Spencer has changed her story, the proper tool

for probing this issue is rigorous questioning during Ms. Spencer's upcoming

deposition and at trial. Given that both tools are still available to Stevens, there is

no substantial need or undue burden association with Defendants' refusal to

produce the Cole Notes." (*Id.*)

In contrast to the circumstances at issue with the Cole notes, here the

documents do not merely relate to counsel's interview of a non-party witness.

Rather, the documents relate to the destruction of evidence and whether that

destruction was intentional and, more specifically, the veracity of counsel herself, a

litigation hold, what counsel told Stevens regarding spoliation, efforts that were

made to preserve the text and metadata evidence, the circumstances in relation to

the erasure of the text messages, and efforts in response to that erasure. As

discussed above, there is a compelling need for these documents.

Finally, Stevens attempts to minimize the spoliation, arguing that there is no substantial need because "there was no loss of text messages that BYU-I did not already have in its possession." (Dkt. 251 at 11.) Stevens argues that BYU-I already had screen shots of the texts that were deleted, and that the only thing lost was the ability to obtain a "third backup of the texts" from the "approximately 30 days between when Plaintiff started using that phone and Stokes' death." (Id. at 12.) Stevens further argues "there was never a complete and total loss of all of Plaintiff's text messages, and BYU-I's assertions otherwise are simply not based upon the actual facts and evidence." (Id.) However, the Court notes that these assertions do not address the loss of metadata and are also inconsistent with prior representations by counsel and Stevens. For example, Ms. Casperson, in a November 10, 2017, letter, stated the following regarding BYU-I's request for production of "Text Messages (ESI)":

> As to the phone *that had the bulk of the text correspondence*, we are working with our IT person to provide all ESI we can. Plaintiff's phone locked up shortly after we began our representation and we understood those texts were lost, but are exploring all options. We are attempting to resolve this as quickly as possible and will, at a minimum, get the ESI regarding the dates of the screen shots.

(Dkt. 251-3 (emphasis added).) Thus, it was represented by Stevens' counsel that the cell phone that had the "bulk" of text correspondence is the one that froze up.

In contrast, Stevens is now taking the position that this cell phone only had texts from "approximately 30 days." The Court has previously noted other inconsistencies regarding the deletions of the texts. (*See* Dkt. 233, 246.)

In sum, the Court finds that BYU-I has demonstrated that there is a substantial and compelling need for the documents that the Court is requiring Stevens to disclose, as detailed below, and that BYU-I cannot obtain the substantial equivalent of the documents through any other means.

### C.  Some of the requested documents exceed the scope of the deposition; others do not and will be ordered disclosed.

Stevens argues that the documents requested by BYU-I exceed the scope of the deposition allowed by the Court. The Court previously ordered that Ms. Casperson's deposition may "inquire into relevant evidence that is necessary to resolve (1) the motion for sanctions [for spoliation] and (2) Stevens' credibility." (Dkt. 246 at 5.) As detailed below, the Court finds that although some of the requested documents exceed the scope of inquiry allowed by the Court, most of the requested documents do not and will be ordered disclosed.

### 1.  Documentary evidence of instructions from counsel to Ms. Stevens (or others) to maintain and preserve evidence such as texts, emails, correspondence, etc.

BYU-I's first request is for "Documentary evidence of instructions from counsel to Ms. Stevens (or others) to maintain and preserve evidence such as

texts, emails, correspondence, etc. In particular this includes litigation hold instructions, correspondence relating to any violations of the hold instructions, and documents relating to any attempt to remedy the violations."

The Court finds that Stevens' counsel should be required to disclose anything in counsel's files regarding instructions to Stevens about evidence preservation prior to the deletion of the materials from the phone. This includes evidence regarding the initial instructions given by counsel to Stevens, the response to the deletion from the phone, and attempts to remedy the problem. This disclosure requirement does not, however, extend to evidence regarding, or allow inquiries into, other potential violations. In other words, no fishing expedition for other violations is allowed.

>        **2.      Notes of client or interoffice communications relating to maintaining and/or destroying, tampering or altering evidence.**

BYU-I's second request is for "Notes of client or interoffice communications relating to maintaining and/or destroying, tampering or altering evidence."

The Court finds that disclosure of this information is appropriate to the extent the notes or communications relate to a litigation hold, general instructions to Stevens about spoliation, and any notes or communications regarding the phone erasure incident. Again, however, no fishing expedition for other violations is

allowed.

**3.     Notes of client or interoffice communications relating to the fact of destruction or alteration – that is, when and how counsel became aware that deletions had occurred and, specifically, that alterations had occurred within given text strings.**

BYU-I's third request is for "Notes of client or interoffice communications relating to the fact of destruction or alteration- that is, when and how counsel became aware that deletions had occurred and, specifically, that alterations had occurred within given text strings."

The Court finds disclosure of this information is appropriate.

**4.     Notes of conversations concerning counsel's obligation to notify the Court and opposing counsel of text alterations, evidence destruction or electronic information deletions.**

BYU-I's fourth request is for "Notes of conversations concerning counsel's obligation to notify the Court and opposing counsel of text alterations, evidence destruction or electronic information deletions."

The Court finds this request to be vague and will accordingly deny the motion to compel this disclosure of information.

**5.     Notes relating to the investigation of facts referenced in any of Ms. Stevens' declarations, or counsel correspondence concerning lost, altered or deleted texts**

BYU-I's fifth request is for "Notes relating to the investigation of facts

referenced in any of Ms. Stevens' declarations, or counsel correspondence concerning lost, altered or deleted texts."

To the extent BYU-I is seeking notes related to the investigation of the phone erasure incident, the Court finds that disclosure of the information is appropriate. To the extent BYU-I is seeking information beyond that, the Court will deny the motion to compel disclosure of such information.

> **6.** **Any documents relating to communications with AT&T or any other retail establishment allegedly involved in resolving the "frozen" cell phone(s) or deleting any texts.**

BYU-I's sixth request is for "Any documents relating to communications with AT&T or any other retail establishment allegedly involved in resolving the 'frozen' cell phone(s) or deleting any texts. This would obviously include any attempts to retrieve the deletions or any documentation concerning the investigation of same."

The Court finds disclosure of this information is appropriate.

> **7.** **Any documents relating to counsel's allowance of Ms. Stevens to retain the cell phone or phones after commencement of this action as described in the Court's Memorandum Decision, pg. 9 (Dkt. #233).**

BYU-I's seventh request is for "Any documents relating to counsel's allowance of Ms. Stevens to retain the cell phone or phones after commencement of this action as described in the Court's Memorandum Decision, pg. 9 (Dkt.

#233).”

The Court finds disclosure of this information is appropriate.

> **8.   Any documentation which may demonstrate "intent" to destroy, alter or failure to maintain evidence.**

BYU-I's eighth request is for "Any documentation which may demonstrate 'intent' to destroy, alter or failure to maintain evidence."

The Court finds disclosure of this information is appropriate but only to the extent it relates to the phone erasure incident.

> **9.   Any documentation relating to the contradictory or inconsistent versions of the text deletions as referenced in the Court's Memorandum Decisions (Dkts. # 233, 246) pgs. 9 and 13 respectively.**

BYU-I's ninth request is for "Any documentation relating to the contradictory or inconsistent versions of the text deletions as referenced in the Court's Memorandum Decisions (Dkts. # 233, 246) pgs. 9 and 13 respectively."

The Court finds this request to be vague. The Court will accordingly deny the motion to compel this disclosure of information.

> **10.   Any other documents, notes, emails concerning these subjects especially any communications with Ms. Stevens**

BYU-I's tenth and final request is for "Any other documents, notes, emails concerning these subjects especially any communications with Ms. Stevens."

The Court finds disclosure of this information to be appropriate but only to

the extent it relates to the phone erasure incident.

## ORDER

**IT IS ORDERED that** Defendant BYU-I's Motion to Compel (Dkt. 249) is GRANTED in part and DENIED in part as follows:

1.      Plaintiff shall disclose, within 10 days of the date this Order is entered, documentary evidence of instructions from counsel to Plaintiff to maintain and preserve evidence such as texts, emails, correspondence, etc., prior to the deletion of the materials from the cell phone(s). This includes evidence regarding the initial instructions given by counsel to Plaintiff, any response to the deletion from the phone, and attempts to remedy the problem. This disclosure requirement does not, however, extend to evidence regarding, or allow inquiries into, other potential violations.

2.      Plaintiff shall disclose, within 10 days of the date this Order is entered, notes of client or interoffice communications relating to maintaining and/or destroying, tampering or altering evidence to the extent the notes or communications relate to a litigation hold, general instructions to Plaintiff about spoliation, and any notes or communications regarding the phone erasure incident.

3.      Plaintiff shall disclose, within 10 days of the date this Order is entered, notes of client or interoffice communications relating to the fact of destruction or alteration – that is, when and how counsel became aware that

deletions had occurred and, specifically, that alterations had occurred within given text strings.

4.      The request to compel production of notes of conversations concerning counsel's obligation to notify the Court and opposing counsel of text alterations, evidence destruction or electronic information deletions is denied as vague.

5.      Plaintiff shall disclose, within 10 days of the date this Order is entered, notes relating to the investigation of facts referenced in any of Plaintiff's declarations, or counsel correspondence concerning lost, altered or deleted texts to the extent this relates to investigation of the phone erasure incident only. To the extent BYU-I is seeking information beyond that related to the phone erasure incident, the motion to compel disclosure is denied.

6.      Plaintiff shall disclose, within 10 days of the date this Order is entered, any documents relating to communications with AT&T or any other retail establishment allegedly involved in resolving the "frozen" cell phone(s) or deleting any texts. This would include any attempts to retrieve the deletions or any documentation concerning the investigation of same.

7.      Plaintiff shall disclose, within 10 days of the date this Order is entered, any documents relating to counsel's allowance of Ms. Stevens to retain the

cell phone or phones after commencement of this action as described in the Court's Memorandum Decision, pg. 9 (Dkt. 233).

8.      Plaintiff shall disclose, within 10 days of the date this Order is entered, any documentation which may demonstrate "intent" to destroy, alter or failure to maintain evidence to the extent the documentation relates to the phone erasure incident.

9.      The request to compel production of any documentation relating to the contradictory or inconsistent versions of the text deletions as referenced in the Court's Memorandum Decisions (Dkt. 233 at 9; Dkt. 246 at 13) is denied as vague.

10.      Plaintiff shall disclose, within 10 days of the date this Order is entered, any other documents, notes, emails concerning these subjects especially any communications with Ms. Stevens to the extent such documents, notes, emails relate to the phone erasure incident.

DATED: December 11, 2020

B. Lynn Winmill
U.S. District Court Judge