UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY - IDAHO, dba BYU-Idaho,<br><br>Defendant. | Case No. 4:16-cv-00530-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff's Motion to Disqualify (Dkt. 252). Plaintiff seeks to have the Court disqualify the law firm Kirton McConkie from representing defendant, Brigham Young University – Idaho (BYU-I). For the reasons discussed below, the Court denies the motion but, in doing so, places additional conditions on Kirton McConkie's continued representation of BYU-I.

## BACKGROUND

Plaintiff, Lori Stevens, brought this action against Defendant BYU-I alleging teacher-on-student hostile environment/sexual harassment in violation of Title IX of the Education Amendments Act, 20 U.S.C. § 1681 *et seq.*, and teacher-on-

student quid pro quo sexual harassment. These allegations arise out of an alleged intimate sexual relationship that occurred between Stevens, a former student at BYU-I, and Stephen Stokes, a former professor for BYU-I who is now deceased.

### A. BYU-I's Attempts to Obtain Stevens' Privileged Communications

From early in this case, BYU-I has repeatedly sought to have the Court find that Stevens waived her priest-penitent privilege in relation to her communications with ecclesiastical leaders with the LDS Church. (*See, e.g.,* Dkts. 22, 39, 46, and 139.) Also, early on in this litigation, the LDS Church was granted permission to intervene in this action for the limited purpose of asserting privilege in materials that BYU-I sought in discovery, including materials covered by the priest-penitent privilege. (*See, e.g.,* Dkts. 49, 89.)

BYU-I's motions seeking a declaration that Stevens has waived her priest-penitent privilege have been denied in part and granted in part. (*See* Dkts. 89, 154.) For example, Judge Nye held that Stevens waived the privilege with respect to her communications with Bishop Lovell and the Beesleys but had not done so with respect to her communications with President Moore and Bishop Garrett. (Dkt. 89 at 53-54.) As to her conversations regarding her request for an ecclesiastical endorsement to return as a student to BYU-I, Judge Nye stated:

> Stevens' counsel clarified that Stevens is not claiming BYU-I, or any of its employees, discriminated against her or retaliated against her by

>denying her an ecclesiastical endorsement. In addition, Stevens is not using this conversation with Bishop Garrett to prove BYU-I knew about Stokes' behavior and failed to take action to stop or prevent it. In other words, counsel clarified that these allegations about Stevens' conversation with Garrett are mere factual background.

(*Id.* at 20.) Judge Nye reached the same decision regarding Stevens' communications with President Moore. (*Id.* at 21.) However, Stevens was warned that she "will not be permitted to change her tune at trial. To do so would deny BYU-I a fair opportunity to defend itself." (*Id.* at 20.)

Stevens has also represented throughout her filings in this case that she has no intention of testifying about the substance of her communications with her Bishop or Stake President, and the Court has ruled that Stevens is precluded from presenting any evidence or argument on claims that implicate her ecclesiastical communications. (Dkt. 154 at 15-16.)

### B. Counsel Representing the Church and BYU-I

The Church has been, and continues to be, represented by Richard Armstrong and the law firm Kirton McConkie.

Defendant BYU-I has been represented by Steven Anderson and Wade Woodward since BYU-I entered its initial appearance in this action. At that time, and until the fall of 2020, Anderson and Woodward were both with the law firm Anderson Schwartzman Woodward Brailsford, PLLC.

Christine Arnold also entered an appearance for BYU-I, and at that time was also with the law firm Anderson Schwartzman Woodward Brailsford, PLLC.

However, on September 15, 2020, BYU-I filed a notice of appearance showing that BYU-I counsel Woodward and Arnold had joined the firm Kirton McConkie and that they were continuing to represent BYU-I (Dkt. 247). Thus, Kirton McConkie is now representing BYU-I as well as the Church. This notice of appearance states:

> Kirton McConkie has instituted a "Chinese Wall" so that counsel for BYU Idaho (Wade Woodward and Christine Arnold) will not have access to any Kirton McConkie databases which related, in any way, to the Lori Stevens Litigation stemming from Kirton McConkie's representation of the LDS Church. The BYU Idaho attorneys will not seek from the LDS Church's attorneys any information they may have regarding Lori Stevens that could possibly be privileged.

(*Id.*) On October 6, 2020, BYU-I attorney Anderson submitted a "notice of change of address" showing that he also joined the firm Kirton McConkie. (Dkt. 248.)

Stevens seeks to have Kirton McConkie disqualified as counsel for BYU-I, contending that the firm's representation of both BYU-I and the Church creates a concurrent conflict of interest.

## LEGAL STANDARD

Disqualification of counsel is governed by state law, here Idaho state law,

and may arise where counsel has violated applicable standards of professional conduct, including standards regarding conflicts of interest. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).

"The decision to grant or to deny a motion to disqualify counsel is within the discretion of the trial court." *Crown v. Hawkins Co.*, 910 P.2d 786, 794 (Id. Ct. App. 1996) (citation omitted). The trial court must recognize its discretion, and must exercise that discretion consistently with the applicable legal standards, in making a reasoned decision. *Id.* "The moving party has the burden of establishing grounds for disqualification." *Id.*

In deciding a motion for disqualification, the goal of the court is to shape a remedy that "will assure fairness to the parties and the integrity of the judicial process." *Id.* at 795. "Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client. Where the motion to disqualify comes not from a client or former client of the attorney, but from an opposing party, the motion should be reviewed with caution." *Id.*

## ANALYSIS

Stevens argues that the Court should disqualify the law firm Kirton McConkie from representing BYU-I because there is a concurrent conflict of interest between BYU-I and the Church arising out of issues of privilege and the

duty the Church owes to Stevens to protect information covered by the priest-penitent privilege. As discussed below, the Court agrees that there is a concurrent conflict of interest, but declines, in the exercise of its discretion, to order disqualification of BYU-I's counsel. The Court is, however, imposing additional conditions intended as safeguards to help ensure that Stevens' privileged information is protected from disclosure.

> Under Rule 1.7 of the Idaho Rules of Professional Conduct,
>
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by the personal interests of the lawyer, including family and domestic relationships.

Idaho R. Prof. Conduct 1.7(a). Comment 1 to Rule 1.7 provides the following additional guidance: "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests." Idaho R. Prof. Conduct 1.7, cmt. 1.

The present case presents a situation that is not clearly addressed by Rule 1.7(a) because the duty at issue here—to protect privileged information—is owed not directly by the firm or its attorneys to a client, former client, or third person. The duty is, instead, owed by a current client of the firm—the Church—to a third person—Stevens.

The Court has not located, and the parties have not cited, any cases directly on point for these unique circumstances. Nonetheless, the Court finds that under the facts of this case, the representation by Kirton McConkie of both BYU-I and the Church has created a concurrent conflict of interest under Rule 1.7(a).

The Church, and Kirton McConkie, through its representation of the Church, possess information covered by the priest-penitent privilege. The Church, and Kirton McConkie, again through its representation of the Church, owe a duty to Stevens, a "third person," to protect that privileged information from disclosure.

At the same time, BYU-I, through counsel, who are now with the law firm of Kirton McConkie, has repeatedly sought to obtain the privileged information that the Church and Kirton McConkie possess and are obligated to protect. As a result, Kirton McConkie's representation of BYU-I is materially limited by Kirton McConkie's representation of the Church and resulting obligation to protect the very information that BYU-I seeks to obtain. Moreover, there is a significant risk

that Kirton McConkie's representation of BYU-I will be materially limited by the Church's, and thus the firm's, responsibilities to Stevens to not disclose the privileged information. The Court finds that these circumstances have created a concurrent conflict of interest under Rule 1.7(a).

The existence of a concurrent conflict of interest does not, however, require the disqualification of Kirton McConkie from representing BYU-I. Instead, the Court must determine whether, in light of this concurrent conflict of interest, the firm can continue to represent both BYU-I and the Church. The standard for making that determination is set out in Rule 1.7(b) which provides:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

Idaho R. Prof. Conduct 1.7(b).

Applying the standards of Rule 1.7(b), the Court will, in the exercise of its

discretion, allow the firm of Kirton McConkie to continue its representation of both BYU-I and the Church. However, the Court will impose additional safeguards intended to ensure that privileged information regarding Stevens is not disclosed as a result of this continued representation. In reaching this decision, the Court relies on the following factors.

First, the Court rejects Stevens' argument that it is her consent, rather than the consent of BYU-I and the Church, that is required under Rule 1.7(b). Although Rule 1.7 refers to a third person's interest, this reference is only in relation to whether a conflict exists under Rule 1.7(a). The consent provisions of Rule 1.7(b), in contrast, refer only to clients, and the requirement that the clients consent to the representation. There is no evidence that Stevens has ever been a client of Kirton McConkie or a client of the attorneys representing BYU-I and the Church. Moreover, there is no indication in the language of Rule 1.7 or the comments to that rule indicating that the consent of a third party is required. And Stevens has not cited to any authority convincing the Court that a third party's consent is required under these circumstances. The Court finds, based on the plain language of Rule 1.7, that Stevens' consent is not required and that, instead, only the consent of clients is required.

Second, the Court notes that the privileged communications at issue here do

not appear to be a central issue in the case. Stevens has indicated that she will not be using any of the communications to her Bishop or her Stake President in the case so as to avoid waiving the privilege. This, in turn, precludes BYU-I from using any such communications at trial.

Third, the Court recognizes that it is not just the use of privileged communications at trial that is problematic here, but also the potential "derivative" use of the privileged communications. For example, if, hypothetically, Stevens disclosed to her Bishop that she had another intimate relationship, that statement could not be offered at trial without violating the privilege. However, if that statement was disclosed to BYU-I, there is the potential for that information to be used derivatively to seek out the hypothetical individual with whom Stevens had an intimate relationship and thus obtain the same information in what might be argued is a "non-privileged" way. The Court finds that such derivative use is inappropriate and would violate the priest-penitent privilege. Thus, the Court holds that the priest-penitent privilege covers both privileged information and any information obtained through the derivative use of privileged information.

Fourth, this case has been ongoing for more than four years and is reaching the closing stages of dispositive motions and trial. It is likely that thousands of hours, and hundreds of thousands of dollars in attorneys' fees, have already been

incurred in this case. If counsel for BYU-I were to be disqualified at this late stage of the proceedings, dispositive motions and/or trial would be further delayed, and time and effort previously spent would likely have to be duplicated.

Finally, assurances have been provided by Kirton McConkie and specifically the attorneys involved in this case, regarding the protection of the privileged information that is in the possession of the firm. The declarations from these attorneys and other assurances provided in briefing and during arguments before the Court demonstrate the following:

- A Chinese Wall was erected when counsel representing BYU-I joined Kirton McConkie, with the Chinese Wall designed to protect communications covered by the priest-penitent privilege in the possession of the firm and the Church.

- The attorneys that joined the firm representing BYU-I in this case have never represented the Church in this case; and the attorneys that have represented and continue to represent the Church in this case have never represented BYU-I in this case.

- There has not been, and will not be, any exchange between the attorneys representing BYU-I and the attorneys representing the Church of information regarding Stevens' privileged

MEMORANDUM DECISION AND ORDER - 11

communications.[1]

- The attorneys representing BYU-I and the attorneys representing the Church have stated that they reasonably believe that they will be able to provide competent and diligent representation to each of these two clients despite the concurrent conflict of interest.

- Both BYU-I and the Church have been informed of the concurrent conflict of interest, have consented to the continued representation by Kirton McConkie, and have confirmed that consent in writing.

The Court has no reason to question the representations of counsel and further notes the obligations of honesty owed by counsel under Federal Rule of Civil Procedure 11, and counsel's general duty of candor to the Court.

All of the above convinces the Court that, in the exercise of its discretion, the motion for disqualification should be denied. However, in denying the motion, the Court will impose the following additional requirements, which are intended to provide further safeguards for the protection of the privileged information. First, the protections for the privileged communications also apply to the derivative use

---

[1] The Court notes the exception where privileged information was apparently inadvertently disclosed by the Church to BYU-I during the discovery process. This occurred early in the discovery process and at a time when BYU-I and the Church were represented by separate firms.

of the privileged communications, as discussed above.

Second, Kirton McConkie shall place a "litigation hold" that preserves (a) everything in Kirton McConkie's possession relating to Stevens; and (b) all communications between attorneys Anderson, Woodard, Arnold, and any other attorney representing BYU-I, and the attorneys representing the Church, that relate to Stevens and/or this litigation.

Third, the attorneys representing BYU-I and the attorneys representing the Church shall immediately notify Stevens' counsel and the Court if any privileged information, or derivative information, regarding Stevens is disclosed to or otherwise obtained by BYU-I or the attorneys representing BYU-I in this litigation.

Based on the foregoing, and with the above discussed protections and safeguards in place, the Court finds that the law firm Kirton McConkie can, despite the concurrent conflict of interest, continue to represent both BYU-I and the Church.[2]

---

[2] The Court has considered and rejects the other arguments raised by Stevens in her briefing and supplemental information provided to the Court, including her argument regarding the Church's payment, through counsel, of a witness's attorneys' fees. This issue has been previously addressed by the Court and will not be readdressed here.

## ORDER

1. **IT IS ORDERED** that Plaintiff's Motion to Disqualify Counsel (Dkt. 252) is **DENIED**.

2. **IT IS FURTHER ORDERED** that counsel for Defendant BYU-I and counsel for the Church shall comply with all conditions, precautions, and safeguards discussed in this Memorandum Decision and Order, including the following:

    a. Maintain the Chinese Wall erected when counsel representing BYU-I joined Kirton McConkie, with the Chinese Wall designed to protect communications covered by the priest-penitent privilege in the possession of the firm and/or the Church.

    b. Attorneys representing BYU-I in this case shall not have represented the Church in this case; and attorneys representing the Church in this case shall not have represented BYU-I in this case.

    c. There shall not be any exchange between the attorneys representing BYU-I and the attorneys representing the Church of information regarding Stevens' privileged communications.

    d. The protections provided for the privileged communications also apply to the derivative use of the privileged communications.

    e. Kirton McConkie shall place a "litigation hold" that preserves

>> (i) everything in Kirton McConkie's possession relating to Stevens; and (ii) all communications between attorneys Anderson, Woodard, Arnold, and any other attorney representing BYU-I, and the attorneys representing the Church, that relate to Stevens and/or this litigation.

> f. The attorneys representing BYU-I and the attorneys representing the Church shall immediately notify Stevens' counsel and the Court if any privileged information regarding Stevens is disclosed to or otherwise obtained by the attorneys representing BYU-I in this litigation.

3. **IT IS FURTHER ORDERED** that the parties shall submit a joint statement within 14 days of entry of this order setting out a proposed timeline for proceeding to the final phases of this case.

4. **IT IS FURTHER ORDERED** that the motion to seal (Dkt. 253) is **GRANTED.** Exhibit H to the Declaration of DeAnne Casperson (Dkt. 252-10) is ordered **SEALED.**

DATED: April 23, 2021

B. Lynn Winmill
U.S. District Court Judge